UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    |
ARTHUR CANTEEN,                     |
                                    |
            Petitioner,             |
                                    |          05 Civ. 4580 (KMW)(DFE)
      -against-                     |          <u>OPINION AND ORDER</u>
                                    |
JOSEPH SMITH, Superintendent,       |
      Shawangunk Correctional       |
      Facility,                     |
                                    |
            Respondent.             |
                                    |
-----------------------------------X
KIMBA M. WOOD, U.S.D.J.:

        Petitioner Arthur Canteen ("Petitioner") brings this <u>pro se</u>

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

("Section 2254").  Petitioner asserts that: (1) certain

statements he made to the police should have been suppressed

because they were made involuntarily (the "Involuntary Statement

Claim"); (2) he was prejudiced when he was precluded from cross-

examining a government witness concerning her arrest (the "Right

to Cross-Examine Claim"); (3) the indictment was defective (the

"Defective Indictment Claim"); (4) the trial court erred by not

submitting an accomplice charge to the jury (the "Accomplice

Charge Claim"); (5) the trial court erred by not submitting an

intoxication charge to the jury (the "Intoxication Charge

Claim"); (6) the trial court erred by submitting an improper

intent charge to the jury (the "Intent Charge Claim"); (7) the

line-up identification should have been suppressed because the

police lacked probable cause for the arrest (the "Line-Up

Identification Claim"); and (8) the trial court erred by submitting the charge of depraved indifference murder to the jury (the "Twin Theories Claim") (collectively, the "Claims").

I.   **PROCEDURAL HISTORY**

On March 13, 2000, following a jury trial, the New York State Supreme Court, Bronx County ("Supreme Court"), rendered judgment (1) convicting Petitioner of murder in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, and assault in the second degree; and (2) sentencing Petitioner, as a second felony offender, to an aggregate term of 45 years to life.  People v. Canteen, 95 A.D.2d 256, 256 (N.Y. App. Div. 2002).

Petitioner appealed his conviction to the New York State Appellate Division, First Department ("Appellate Division"), raising, inter alia, the Involuntary Statement Claim, the Accomplice Charge Claim, the Intent Charge Claim, and the Line-Up Identification Claim.  (Rong Aff. Exs. 2, 4; Docket Entry 11.) On June 25, 2002, the Appellate Division unanimously affirmed Petitioner's conviction.  People v. Canteen, 95 A.D.2d 256, 256-57 (N.Y. App. Div. 2002).  The Appellate Division rejected the Involuntary Statement Claim because Petitioner "never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved, and we decline to review it in the interest of

2

justice." Id. at 256.  The Appellate Division also rejected the
Accomplice Charge Claim, the Intent Charge Claim, and the Line-Up
Identification Claim stating that "[w]e have considered and
rejected [Petitioner's] remaining claims." Id. at 257.
Petitioner then applied for leave to appeal to the New York State
Court of Appeals ("Court of Appeals").  (Rong Aff. Ex. 5.)  On
September 27, 2002, the Court of Appeals denied Petitioner's
application.  People v. Canteen, 98 N.Y.2d 729 (2002).

On December 4, 2002, Petitioner moved pro se for a writ of
error coram nobis arguing ineffective assistance of appellate
counsel for failure to raise, inter alia, the Involuntary
Statement Claim and the Defective Indictment Claim.  (Rong Aff.
Ex. 6.)  On July 10, 2003, the Appellate Division denied
Petitioner's motion.  People v. Canteen, 307 A.D.2d 782 (N.Y.
App. Div. 2003).  Petitioner then applied for leave to appeal to
the Court of Appeals.  On December 2, 2003, the Court of Appeals
denied Petitioner's application.  People v. Canteen, 1 N.Y.3d 569
(2003).

On June 9, 2004, Petitioner moved pro se to vacate the
judgment of conviction pursuant to New York Criminal Procedure
Law ("CPL") § 440.10, raising, inter alia, the Right to Cross-
Examine Claim.  (Rong Aff. Ex. 7.)  On October 21, 2004, the
Supreme Court denied this motion.  (Rong Aff. Ex. 8.)  The
Supreme Court found that the Right to Cross-Examine Claim "is

3

grounded in the record," but was not raised on direct appeal.

Therefore, the Supreme Court held that it was "foreclosed from

considering" the claim.  (Id. at 4.)  Petitioner then applied for

leave to appeal to the Appellate Division.  On March 15, 2005 the

Appellate Division denied Petitioner's application.  (Rong Aff. ¶

16.)

The Court hereby summarizes the Claims that Petitioner

raised on direct appeal and collateral review:  On direct appeal,

Petitioner raised the Involuntary Statement Claim, the Accomplice

Charge Claim, the Intent Charge Claim, and the Line-Up

Identification Claim.  In his motion for a writ of error coram

nobis, Petitioner argued ineffective assistance of appellate

counsel for failure to raise the Involuntary Statement Claim and

the Defective Indictment Claim.  In his CPL § 440.10 motion,

Petitioner raised the Right to Cross-Examine Claim.

On April 14, 2005, Petitioner timely filed a pro se habeas

petition.  (Docket Entry 1.)  On May 11, 2005, Judge Michael B.

Mukasey, then Chief Judge, ordered Petitioner to file an amended

petition to clarify the grounds for the requested relief.

(Docket Entry 3.)  On July 7, 2005, Petitioner filed an amended

petition raising the Claims.  (Docket Entry 4.)

By report and recommendation dated December 26, 2007 (the

"Report"), familiarity with which is assumed, Magistrate Judge

Douglas F. Eaton recommended that the habeas petition be denied.

(Docket Entry 31.)  Respondent Joseph Smith ("Respondent") agreed with the Report's recommendation, but filed timely written objections to the Report's analysis of five of the Claims. (Docket Entries 32, 33.)  Petitioner did not file any objections to the Report and did not respond to Respondent's objections.

For the reasons stated below, the Court denies the habeas petition.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court must review _de novo_ those portions of the magistrate judge's report and recommendation to which timely written objections have been filed.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  In its discretion, the Court may also undertake _de novo_ review of those portions of the magistrate judge's report and recommendation to which no timely written objections have been filed.  See Thomas v. Arn, 474 U.S. 140, 154 (1985).  Respondent filed objections to the Report's analysis of five claims.  The Court thus reviews _de novo_ those five claims and undertakes _de novo_ review of the three remaining claims.

### B.  STANDARD OF REVIEW OF A SECTION 2254 HABEAS PETITION

#### 1.  THE EXHAUSTION REQUIREMENT

It is well settled that applicants seeking habeas corpus relief pursuant to Section 2254 must first exhaust all remedies available in the state courts.  Aparicio v. Artuz, 269 F.3d 78,

89 (2d Cir. 2001).  Exhaustion requires a petitioner to "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition."  Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).

"When a claim has never been presented to a state court" it is unexhausted, but a federal habeas court may "deem the claim exhausted" if "its presentation in the state forum would be futile."  Aparicio, 269 F.3d at 90.  Accordingly, a federal habeas court may deem a claim exhausted if "there is either [1] an absence of available State corrective process; or [2] the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."  Id. at 89 (quoting 28 U.S.C. § 2254(b)(1)).

Alternatively, an unexhausted claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  "The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits."  Toland v. Walsh, No. 02 Civ. 0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008).  "Several district judges in this Circuit have expressed the test as whether the unexhausted claim is 'patently frivolous.'"  Hernandez v. Lord, No. 00 Civ. 2306, 2000 WL 1010975, at *4 (S.D.N.Y. July 21, 2000) (collecting cases).  "Other courts . . . express the test as

whether it is perfectly clear that the [petitioner] does not raise even a colorable federal claim, in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. at *4 n.8 (internal quotation marks and citation omitted) (collecting cases).

## 2.   PROCEDURAL DEFAULT

Procedural default occurs (1) "when a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement," Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); or (2) when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Id. at 735 n.1.  However, a state procedural bar "will be deemed adequate only if it is based on a [procedural requirement] that is firmly established and regularly followed by the state in question." Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (internal quotation marks and citations omitted).

Procedural default generally precludes federal habeas relief.  See Jones v. Vacco, 126 F.3d 408, 414 (2d Cir. 1997). However, a petitioner may overcome procedural default, by demonstrating "[1][a] cause for the default and [b] prejudice, or [2] demonstrat[ing] that failure to consider the claims will

result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  <u>Aparicio</u>, 269 F.3d at 90.  "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule.'"  <u>Clark v. Perez</u>, 510 F.3d 382, 393 (2d Cir. 2008) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  To establish "actual prejudice," a petitioner must establish "a reasonable probability" that, but for the violation of federal law, the outcome of the case would have been different.  <u>Mathis v. Hood</u>, 937 F.2d 790, 794 (2d Cir. 1991).  A "fundamental miscarriage of justice" occurs only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Washington v. James</u>, 996 F.2d 1442, 1447 (2d Cir. 1993) (internal quotation marks and citation omitted).

      **3.    DEFERENCE TO STATE COURT ADJUDICATIONS**

      Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a Section 2254 habeas petition

> with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the
> adjudication of the claim (1) resulted in a decision
> that was contrary to, or involved an unreasonable
> application of clearly established Federal law, as
> determined by the Supreme Court of the United States;
> or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the

8

evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2).[1] "[T]o invoke the deferential standards of AEDPA, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." Aparicio, 269 F.3d at 93-94.

The "contrary to" clause of Section 2254(d)(1) is satisfied when "(1) the state court applies a rule that contradicts the governing law set forth in the relevant Supreme Court precedents, or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [the Supreme Court] precedent." Brooks v. Artuz, No. 97 Civ. 3300, 2000 U.S. Dist. LEXIS 15070, at *8 (S.D.N.Y. Oct. 17, 2000) (internal quotation marks and citation omitted).

"Under the 'unreasonable application' clause of [Section] 2254(d)(1), 'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Cotto, 331 F.3d

---

[1] The Court notes that even liberally construing the Claims, as the Court must, Petitioner does not raise a Section 2254(d)(2) challenge. See Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (submissions filed by pro se litigants shall be construed to "raise the strongest arguments that they suggest").

at 247 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).

The Supreme Court clarified that "an <u>unreasonable</u> application of

federal law is different from an <u>incorrect</u> application of federal

law." <u>Williams</u>, 529 U.S. at 412 (emphasis in original). A

federal court thus cannot grant habeas relief because, "in its

independent judgment, it would have decided the federal law

question differently." <u>Aparicio</u>, 269 F.3d at 94.

    C.    **<u>THE CLAIMS</u>**

        1.   **PROCEDURALLY DEFAULTED CLAIMS**

The Court dismisses five claims for procedural default: the

Involuntary Statement Claim, the Right to Cross-Examine Claim,

the Defective Indictment Claim, the Accomplice Charge Claim, and

the Intoxication Charge Claim. "Dismissal for procedural default

is regarded as a disposition of the habeas claim on the merits."

<u>Aparicio</u>, 269 F.3d at 90.

        a.   **THE INVOLUNTARY STATEMENT CLAIM AND THE RIGHT TO CROSS-EXAMINE CLAIM**

After <u>de novo</u> review, the Court finds that a state court

previously declined to address the Involuntary Statement Claim

and the Right to Cross-Examine Claim due to Petitioner's failure

to meet state procedural requirements. The Court thus dismisses

these two claims for procedural default.

In his Involuntary Statement Claim, Petitioner contends that

his statement to the police should have been suppressed at trial

because it was taken involuntarily. (<u>See</u> Am. Pet. ¶ 13; Pet. 6.)

At trial, Petitioner testified that he was beaten by detectives who instructed him how to answer questions. (Tr. 1115-18, 1127-29.) On direct appeal, the Appellate Division held that because Petitioner "never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved, and we decline to review it in the interests of justice." People v. Canteen, 95 A.D.2d at 256.[2] The Court of Appeals denied Petitioner's application for leave to appeal without elaboration.[3]

_____

[2]The Appellate Division further found that "[w]ere [it] to review this claim, [it] would find that the People established the voluntariness of [Petitioner's] statements beyond a reasonable doubt and that [Petitioner's] trial testimony does not warrant a different conclusion." People v. Canteen, 95 A.D.2d at 256. Although the Appellate Division ruled in the alternative on the merits of the Involuntary Statement Claim, the Appellate Division expressly relied on Petitioner's failure to satisfy a procedural requirement as a separate basis for the decision. Accordingly, the Court concludes that the Involuntary Statement Claim is procedurally defaulted. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

[3]The Court finds that the Court of Appeals "did not silently disregard [the procedural default] and consider the merits" of the Involuntary Statement Claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).
    The Court further finds that the Appellate Division did not consider the merits of the Involuntary Statement Claim in the context of Petitioner's motion for a writ of error coram nobis. In this motion, Petitioner argued ineffective assistance of appellate counsel based on his appellate counsel's failure to raise the Involuntary Statement Claim. "[T]he writ of error coram nobis lies in [state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks and citations omitted). The underlying Involuntary Statement Claim is distinct from the ineffective assistance of appellate counsel claim. "A court considering ineffective assistance might never reach the underlying Constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying Constitutional claims." Id. The Appellate Division

In his Right to Cross-Examine Claim, Petitioner contends
that he was prejudiced when he was precluded from cross-examining
Sandra Smallwood, a government witness, concerning her arrest on
December 13, 1997 for allegedly taking a gun from a shooter.
(See Pet. 8-9.)  On collateral review of Petitioner's CPL §
440.10 motion, the Supreme Court held that it was "foreclosed
from considering" this claim because it "is grounded in the
record," but was not raised on direct appeal.[4]  (Rong Aff. Ex.
8.)  The Appellate Division denied Petitioner's application for
leave to appeal without elaboration.[5]

The state court adjudications of each claim rested on an
adequate state procedural bar.  The Appellate Division rejected

---

did not indicate any consideration of the merits of the Involuntary
Statement Claim.  The Court thus finds that the Appellate Division did
not consider the merits of this claim in the context of Petitioner's
motion for a writ of error coram nobis.
      Accordingly, "the last reasoned opinion on the [Involuntary
Statement Claim] explicitly imposes a procedural default."  Ylst, 501
U.S. at 803.

[4]Pursuant to CPL § 440.10(2)(c):

      [T]he court must deny a motion to vacate a judgment when . .
      . [a]lthough sufficient facts appear on the record of the
      proceedings underlying the judgment to have permitted, upon
      appeal from such judgment, adequate review of the ground or
      issue raised upon the motion, no such appellate review or
      determination occurred owing to the defendant's
      unjustifiable failure to take or perfect an appeal during
      the prescribed period or to his unjustifiable failure to
      raise such ground or issue upon an appeal actually perfected
      by him.

[5]The Court finds that the last reasoned opinion on the Right to
Cross-Examine Claim explicitly imposes a procedural default.  See
supra note 3 (explaining the presumption that a reviewing court does
not silently consider the merits of a claim).

the Involuntary Statement Claim because Petitioner failed to
comply with New York's preservation rule.  See Richardson v.
Greene, 497 F.3d 212, 217 (2d Cir. 2007) (citing CPL § 470.05(2))
(the New York preservation rule "requires a contemporaneous
objection to any alleged legal error by defense counsel at a
criminal trial").  The Supreme Court rejected the Right to Cross-
Examine Claim because CPL § 440.10(2)(c) precludes consideration
of record-based claims on collateral review.  See People v.
Mower, 97 N.Y.2d 239, 245-46 (2002) (holding that when a claim
"does not involve factual matters beyond the scope of the record
or legal issues which could not have been asserted before the
final judgment of conviction, it [is] not the proper subject of a
CPL [§] 440.10 motion").  Both of these procedural requirements
are firmly established and regularly followed.  See Richardson,
497 F.3d at 220; Mower, 97 N.Y.2d at 245-46; People v. Cooks, 67
N.Y.2d 100, 103-04 (1986).  Accordingly, the Involuntary
Statement Claim and the Right to Cross-Examine Claim are
procedurally defaulted.

Petitioner fails to overcome these procedural defaults.
Petitioner presents no evidence demonstrating (1)(a) "cause" for
the failure to properly preserve the Involuntary Statement Claim
or for the failure to raise the Right to Cross-Examine Claim on
direct appeal; and (b) "actual prejudice" arising from either
procedural default; or (2) that failure to consider the

Involuntary Statement Claim or the Right to Cross-Examine Claim will result in a "fundamental miscarriage of justice."

Accordingly, the Court dismisses the Involuntary Statement Claim and the Right to Cross-Examine Claim for procedural default.

### b.  THE DEFECTIVE INDICTMENT CLAIM, THE ACCOMPLICE CHARGE CLAIM, AND THE INTOXICATION CHARGE CLAIM

After <u>de novo</u> review, the Court finds that (1) Petitioner failed to exhaust state court remedies for the Defective Indictment Claim, the Accomplice Charge Claim, and the Intoxication Charge Claim; and (2) state court review of these three claims is now procedurally barred.  The Court thus dismisses these three claims for procedural default.

Petitioner contends that (1) the indictment was defective because "multiple true bills were filed under a single indictment" (<u>see</u> Am. Pet. ¶ 13; Pet. 8); (2) the trial court erred by not submitting an accomplice charge for Regina Canteen, a government witness, to the jury (<u>see</u> Am. Pet. ¶ 13; Pet. 11-12); and (3) the trial court erred by not submitting an intoxication charge to the jury (<u>see</u> Am. Pet. ¶ 13; Pet. 11). Petitioner failed to exhaust state remedies on the Defective Indictment Claim, the Accomplice Charge Claim, and the

Intoxication Charge Claim.[6]

However, the Court deems these three claims exhausted and
concludes that they are procedurally defaulted. Pursuant to
firmly established and regularly followed procedural
requirements, "the court to which [Petitioner] would be required
to present [these three] claims in order to meet the exhaustion
requirement would now find the claims procedurally barred."
Coleman, 501 U.S. at 735 n.1. Petitioner cannot again seek leave
to appeal any of these three claims "in the Court of Appeals
because he has already made the one request for leave to appeal
to which he is entitled." Grey, 933 F.2d at 120 (citing N.Y.

---

[6]Petitioner referenced (1) the Defective Indictment Claim in his
motion for a writ of error coram nobis, and (2) the Accomplice Charge
Claim on direct appeal. However, these references did not exhaust
state remedies.

The Court finds that in the context of Petitioner's motion for a
writ of error coram nobis, the Appellate Division did not consider the
merits of the Defective Indictment Claim. See supra note 3
(explaining the distinction between an underlying claim and an
ineffective assistance of appellate counsel claim based on the
appellate counsel's failure to raise an underlying claim).

The Court finds that although Petitioner raised the Accomplice
Charge Claim on direct appeal (Rong Aff. Ex. 4), he failed to "fairly
present" any federal constitutional aspects of this claim to the
Appellate Division. Daye v. Attorney Gen. of New York, 696 F.2d 186,
194 (2d Cir. 1982) (holding that "a state defendant may fairly present
to the state courts the constitutional nature of his claim, even
without citing chapter and verse of the Constitution [through] (a)
reliance on pertinent federal cases employing constitutional analysis,
(b) reliance on state cases employing constitutional analysis in like
fact situations, (c) assertion of the claim in terms so particular as
to call to mind a specific right protected by the Constitution, and
(d) allegation of a pattern of facts that is well within the
mainstream of constitutional litigation."); see also Jones, 126 F.3d
at 413-14 ("Citing a specific constitutional provision or relying on
federal constitutional precedents alerts state courts of the nature of
the claim.")

Court Rules § 500.10(a)).  The three claims are record-based and therefore cannot be raised on collateral review.  <u>See</u> CPL § 440.10(2)(c).  Accordingly, the Court deems these three claims exhausted and concludes that they are procedurally defaulted. <u>See</u> <u>Grey</u>, 933 F.2d at 120-21.

Petitioner fails to overcome these procedural defaults. Petitioner presents no evidence demonstrating (1)(a) "cause" for the failure to raise the Defective Indictment Claim on direct appeal, for the failure to raise any federal constitutional aspects of the Accomplice Charge Claim on direct appeal, or for the failure to raise the Intoxication Charge Claim on direct appeal; and (b) "actual prejudice" arising from any of these procedural defaults; or (2) that failure to consider the Defective Indictment Claim, the Accomplice Charge Claim, or the Intoxication Charge Claim will result in a "fundamental miscarriage of justice."

Accordingly, the Court dismisses the Defective Indictment Claim, the Accomplice Charge Claim, and the Intoxication Charge Claim for procedural default.

## 2.  THE INTENT CHARGE CLAIM

Petitioner contends that the trial court erred by submitting an improper intent charge to the jury.  (<u>See</u> Am. Pet. ¶ 13; Pet. 12-13.)  Petitioner raised the Intent Charge Claim on direct appeal and the Appellate Division stated that it "considered and

rejected" this claim. <u>People v. Canteen</u>, 95 A.D.2d 256, 257

(N.Y. App. Div. 2002). The Appellate Division's decision

constitutes an adjudication on the merits, thereby triggering

review under the deferential standard codified in Section

2254(d).[7] <u>See</u> <u>Aparicio</u>, 269 F.3d at 93-94.

After <u>de novo</u> review, the Court adopts the Report's analysis

of the merits of the Intent Charge Claim (Report 10-11), and

concludes that the intent charge was neither "contrary to" nor

"an unreasonable application of clearly established Federal law,

as determined by the Supreme Court of the United States." <u>See</u> 28

U.S.C. § 2254(d)(1).

### 3.    THE LINE-UP IDENTIFICATION CLAIM

Petitioner contends that the line-up identification should

have been suppressed because the police lacked probable cause for

his arrest. (<u>See</u> Am. Pet. ¶ 13, Pet. 6.)

After <u>de novo</u> review, the Court adopts the Report's analysis

and finds that <u>Stone v. Powell</u>, 428 U.S. 465 (1976), precludes

federal habeas review of this claim. (Report 6-7.) In <u>Stone v.

Powell</u>, the Supreme Court of the United States held that "where

the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim, a state prisoner may not

be granted federal habeas corpus relief on the ground that

---

[7]The Appellate Division's decision is the last reasoned opinion
on the Intent Charge Claim. Petitioner applied for leave to appeal to
the Court of Appeals, but the Court of Appeals denied Petitioner's
application. <u>People v. Canteen</u>, 98 N.Y.2d 729 (2002).

evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. Federal habeas relief may only be granted in such circumstances if "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or the state has provided a corrective mechanism, but the [petitioner] was precluded from using the mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)(en banc), cert. denied, 434 U.S. 1038 (1978)).

Petitioner fails to establish either exception to Stone v. Powell preclusion of federal habeas review. It is evident that (1) New York State provides corrective procedures to redress alleged Fourth Amendment violations, and (2) Petitioner was not precluded from using these procedures. Indeed, Petitioner acknowledges that the Supreme Court conducted a suppression hearing on the Line-Up Identification Claim. (Rong Aff. Ex. 2 5; see also Rong Aff. Ex. 3 5-9.) Petitioner raised the Line-Up Identification Claim on direct appeal. Furthermore, although his application was denied, Petitioner had an opportunity to apply for leave to appeal to the Court of Appeals.

Accordingly, the Court finds that Stone v. Powell precludes federal habeas review of the Line-Up Identification Claim.

## 4.  THE TWIN THEORIES CLAIM

_____Petitioner contends that based on a recent line of cases

narrowing the scope of the crime denominated "depraved

indifference murder," the trial court erred by submitting the

charge of depraved indifference murder to the jury.  (See Am.

Pet. ¶ 13; Pet. 13-14; Report 3-4.)[8]

Petitioner concedes that the Twin Theories Claim "has not

had a chance to be exhausted."  (Am. Pet. ¶ 13.)  The Court

declines to find this claim procedurally defaulted because

Petitioner would, but for the following, be able to raise it in a

CPL § 440.10 motion.  See Mower, 97 N.Y.2d at 245-46 (permitting

CPL § 440.10 motions that assert "legal issues which could not

have been asserted before the final judgment of conviction").

However, under the both the "patently frivolous" test and the

"colorable federal claim" test, the Court denies the Twin

_____

[8]The Court notes an alternative interpretation of Petitioner's
Twin Theories Claim: The trial court improperly permitted the
prosecutor to present, and improperly charged the jury with, two
alternative theories of murder, intentional murder and depraved
indifference murder.  (See Am. Pet. ¶ 13; Pet. 13-14; Report 3-4.)
Petitioner concedes that the Twin Theories Claim "has not had a chance
to be exhausted."  (Am. Pet. ¶ 13.)  However, the Court deems this
interpretation of the Twin Theories Claim exhausted and concludes that
it is procedurally defaulted.  Petitioner cannot again seek leave to
directly appeal this claim and it cannot be raised on collateral
review because it is record-based.  Furthermore, Petitioner presents
no evidence demonstrating (1)(a) "cause" for the failure to raise this
claim on direct appeal; and (b) "actual prejudice" arising from this
procedural default; or (2) that failure to consider this
interpretation of the Twin Theories Claim will result in a
"fundamental miscarriage of justice."  Accordingly, the Court
dismisses this interpretation of the Twin Theories Claim for
procedural default.

Theories Claim on the merits.

Petitioner argues that the trial court erred by submitting the charge of depraved indifference murder to the jury based on a recent line of cases narrowing the scope of the crime denominated "depraved indifference murder."  In <u>People v. Hafeez</u>, 100 N.Y.2d 253, 259 (2003), the Court of Appeals held that when the defendant's actions "were focused on first isolating, then intentionally injuring, the victim . . . there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder."  In <u>People v. Gonzalez</u>, 1 N.Y.3d 464, 467 & 469 (2004), the Court of Appeals found a count of depraved indifference murder  "insupportable as a matter of law" where the defendant shot the victim ten "times at close range, even after [the victim] had fallen to the ground."  In <u>People v. Payne</u>, 3 N.Y.3d 266, 272 (2004), the Court of Appeals held that absent circumstances such as the endangerment of others, "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."

However, the Court finds that this line of cases cannot support an argument that the trial court improperly submitted the charge of depraved indifference murder to the jury.  The Court adopts the Report's analysis, and concludes that Petitioner endangered others when he fired into the crowd at the nightclub. (Report 4.)  The evidence in this case supported conviction on

both the charge of depraved indifference murder, and the charge of intentional murder (on which Petitioner was convicted). The Court finds that Petitioner's argument to the contrary is (1) patently frivolous, and (2) does not raise a colorable federal claim.

Accordingly, the Court denies the Twin Theories Claim on the merits.

## III. **CONCLUSION**

For the reasons set forth above, Petitioner's Section 2254 habeas petition is denied. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); cf. United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated:    New York, New York
          May  14 , 2008

Kimba M. Wood
United States District Judge

21